Next case on our docket is NRA Marriage of Field, 5-24-0405 and 0593. Appellant if you are ready you may proceed and please identify yourself for the record. My name is Dennis Field. I am an attorney licensed to practice here in the state of Illinois and I am also a pro se litigant in this matter. The issues before this court, there are many issues before this court. The first issue is whether or not the child court erred as a matter of law allowing to proceed a child in a claim for additional child support for past years 2017, 2018, 2019, 2020, 2021, 2022 when her only pleading regarding the additional child support was for the year 2016. Her only claim and her preference was for 2016 and that petition was never amended at any time. The real issue before this court is whether or not by the marital settlement agreement, because we are dealing with a contract case here. By the marital settlement agreement I gave up my right to self determination. That is what the issue is. What we have to do is look at the contract. On September 30, 2013 we entered into the contract. It was a negotiated contract. Husband shall pay a base amount of child support in the amount of $1300 retroactive to January 2013. In addition, husband shall pay 28% of any other income received by payment of loans to shareholders, wages, bonuses, dividends, or income from any other source. That is very important. Any other source. There is nothing in the agreement that says I have to remain a partner. I had to even stay as an attorney. I was 15 years old when this was entered into. I was a year and a half away from being able to start taking my retirement. In 1962 I decided to take my retirement. On August 17, 2017 Della filed a motion for additional child support. She stated in particular additional child support against us for the tax year 2016. She attached calculations for that year. She asked for interest starting from past due interest even though the MSA does not provide for interest on additional child support. This is not past due child support. This is additional child support. I already paid the $1300 per month or the total has been $15,600 a year. May I ask you a question, sir? Yes, sir. You raise the issue that the years 2017 through 2022 were not properly included in the pleadings. That is correct, John. Didn't you later agree with the trial court on the record that the proper time periods to be considered were 2016 to 2022? No, what had happened in the case had been continued. She asked me what was set. And I said, yes, that's right. You did set that, Your Honor. I didn't say that that was properly before the court. I just said she asked me what had she set. I didn't I didn't waive any objection to my power objection to it at any point in time. All I said was she said, was this set for today? Yes, it was, Your Honor. And that goes back to the original hearing, Your Honor. When we started this, when they first brought this in. And it was on the first day of the hearing, Your Honor. On August 21st, I filed with the court of memorandum in response to Della's local rule position statement. Her position statement that she filed on August 7th of 2023 was the first time that she had mentioned imputing income. There was never a plea on there that she was going to impute income at any time. Nothing regarding imputing income. What she had done, she had said that I filed a motion to continue in July. And she put it in her that she was going to pursue additional child support for the years 2017 through 2022.  Which she never said she would have the right to do under the MSA you just cited. But that's what she says. And Your Honor, the court listed what was pending. The court listing of the petitions, the only pending plea was filed on August 17th, 2017. What's in Della's counsel drew the court's attention to paragraph 3.3B of the MSA. And said, this is what she intended to read. If wife desires to recalculate and present to the court the calculations of true up, husband agrees to cooperate. She went on to add, there is no requirement that each individual year be put in some sort of pleading in the marriage settlement agreement. Judgment of dissolution of marriage in this case indicates such. Your Honor, 3.3B reads, husband agrees that in the event wife and counsel desire to recalculate the provision for payment of child support as indicated above. Prior to the entry of the formal judgment of dissolution of marriage on June 1st, 2013, husband agrees to cooperate. She misled that to the court. And that's why she didn't file an amended plea when I objected. Because she misled us. That was what she was relying on, was her interpretation of 3.3B. Because the contract itself does not provide for that. And then the judge, based upon her arguments, allowed her to go full. Another question. Yes, sir. The April 4th, 2024 order concerns the amount of credit that you were to receive each year for social security derivative benefits that were paid to the mother. And that order says that was for stipulation. Was there stipulation? What stipulation? What's that? I don't know of any stipulation. Well, that's, do you agree that's what the order says? If that's what the order says, what I put forth was what I, you know, and all I was saying is that in this time I had paid this amount. I did not agree to go forward on imputation. There was no plea money to impute income to me. Nothing. Nothing put me on the bench prior to hearing or during hearing, except when we got into the hearing. All I was doing was saying, Your Honor, this is what I paid. What I paid. Here's what I paid. Yeah. Well, that's all going to be a matter of record, so. Yes, sir. But even if I stipulate that that's what I paid. That's right. I paid that. I'll admit that. That's what I paid. In fact, it's my position that, you know, that there has to be a plea to impute income to me. I said to the court, I believe it was the. Is this the case? I'm sorry.  I want to do an update on it. 17 through 20. What's the theory? How are they going to put me on notice as to how they're pursuing this? What's their cause? They said I should have filed a motion to dismiss. They never filed a motion to that effect. How can I file a motion to dismiss if there's no petition on file? And they have the right throughout to amend. Even after judgment is in it, they could have amended. They could have, you know, they waited until after discovery had closed. And then they would have come forward and supplied me a trial. Forced me to try this by the seat of my pants without discovery. Without having an opportunity to prepare my witnesses. How is that equitable? I mean, that's why we have the rules, you know, for pleading. Because I'll stipulate that I paid extra money in dollars during those years. I have no problem stipulating that. But I do have a problem stipulating that they have the right to go forward on imputation of income. Without giving me an opportunity to prepare. And that's why we have rules. You know, petitioners seem to rely on sole debt. And I'll bring that forward. And in sole debt, the account that the father, who was responsible for child support, filed for true up calculations. He filed. He then filed for the years, I think, 2015, 2016, 2017. Then he filed another account for 2018 and asked for a modification. He filed. The wife then filed a response of pleading. So in that case, we have scenes so that the parties could be attuned to what we're going forward with. They could prepare. And what the father objected to in that case was, he says, Well, I'm the one who filed the petition for true up. And the trial court granted his petitions and she appealed. And at the appellate court, he argued, well, she didn't file much for true up. The appellate court looked at him and said, you did. You filed the petitions. And based upon your petitions, we can go forward. In this case, there's nothing. And I objected. And I objected. I objected before we started the hearing. I objected in closing argument. And I objected before this court. And I've continued to object. When you're talking about impugning, to me, I did a calculation. It was over $500,000 to my bank for over five years. When I was on Social Security, when I, you know, the issue of whether or not the trial court abused the discretion of the law, it doesn't go forward again with a plea. You know, on the petition for attorney's fees. You know, she filed three pleas on that one. And then when I raised that objection to the trial court, she filed three. The trial court gave her her option of which one she could go forward with. I had filed a verified answer to her amended pleading, setting an issue. The parties, you know, basically my response to the plea was based upon the holding. And when Reagan-Schneider, when the Supreme Court said the parties seeking an award of attorney's fees must establish her inability to pay and the other spouse's ability to do so, financial inability exists for the requiring payment of fees and strip that party of her means of support or undermining financial ability. Basically, and I pledged that I was on Social Security and had a limited income. And my former wife at the age of 55 was retired. She had hundreds of thousands of dollars in income or in investments. She owned a house. She owned all these different assets. And when we went to trial, the court said, no, I'm sorry, you have a limited share. I can't. I was limited in my cross-examination in 2016. What is that? We're here in 2023. So the issue is what we could do then. And the court did not even consider what I was saying. The court gave her the option of proceeding on whichever petition she wanted. Am I out of time to continue, Charles, or is it up to you? You can finish a brief summary. You're asking an attorney to be brief? Thank you. I'll admit. There are multiple issues that I've raised in my pleadings, Your Honor. In my brief, which I believe the court will address, I think the most important issue is that first issue, is whether or not I have the rights under the contract to self-determination. Because that is the issue. In order for them to go forward, Your Honor, they would have to plead a modification to the contract, because there's nothing in the contract that says I cannot retire. I cannot take, at the age of 62, take retirement and provide for my child support obligation through my Social Security benefits, which is what I did. I didn't provide the $15,000. I showed the court not only did I provide the $15,000, but I supplied more than the 28% of my income each year. I have fulfilled the terms of the contract. And what they're wanting to do is go beyond the contract. And you can't do that unless you've pleaded and put me on notice that that's what we're doing and give me the opportunity to defend them, to file a motion to dismiss. Because if they filed that in 2023, motions to modify are only effective from the date they're filed. All right. You've gone beyond a brief summary. All right. Thank you, Your Honor. Happily, you may proceed. Please identify yourself for the record. Good morning, Your Honor. May it please the Court and counsel, I'm Rebecca Reinhart here on behalf of the Appellee Della Field. This case is about a father who will take extreme measures to evade his child support obligation. The party's marriage settlement agreement is clear. Mr. Field was to pay 28% of his net income each year to Ms. Field in the form of child support. At the time that the marriage settlement agreement was entered into and ultimately incorporated into the party's dissolution judgment, Mr. Field was a partner in a law firm and his income fluctuated. Because his income fluctuated, and to ensure that Ms. Field would receive regular child support payments, the agreement was $1,300 a month, and in March of the following year there would be a true-up to make sure that she was receiving 20% of his net income. The statutory child support in 2013 when the MSA or the marriage settlement agreement was entered into and which is what governs this case, was 28%. The marriage settlement agreement itself actually includes the statutory language for net income. It incorporates the Illinois Marriage and Dissolution of Marriage Act as it existed at that time in 2013. Wherein a court cannot ascertain an individual's income or wherein an individual reduces his income, imputed income can be utilized, and that's well-defined in the Illinois Marriage and Dissolution of Marriage Act. In August of 2017, Ms. Field was forced to file a motion for additional child support or a true-up of what that 28% net of his income would be. After years of continuances, delays... Can you explain to the court what a true-up is? I guess what I see routinely in my family law practice is even in situations like this where an individual's income can't be easily ascertained going forward, the marriage settlement agreement or child support agreement will specify a certain amount each month and then at a later date, if the parties can't agree what the actual income was for the preceding year, the trial court would have a hearing to determine the actual income and net income for the preceding year. So, for example, if the hearing had taken place in 2017, it would have just been for 2016 and whatever the annual child support obligation was, he would have been given credit for the $1,300 a month that he paid. That was the intent. That's clear in the language of the parties' marriage settlement agreement. It's done frequently when individuals have income that fluctuates, as Mr. Field would have as he was a personal injury attorney. Okay, I asked him two questions. Sure. One was about his argument about the fact that the years 2017 through 2022 were not properly included in the pleadings, and I asked whether that was before the court because of the fact that the parties had agreed. He, of course, you heard him take the position that he did. What is your position about that? I believe that he stipulated on the record actually two times, and I can direct the court's attention to where it is in the report of the proceedings below. Page 599 of Volume 6 of the report of proceedings, and page 606 to 607 of Volume 6, the trial court judge asked Mr. Field on two different occasions to which he affirmatively agreed that 2016 up through and including December 31st of 2022 would be included. So we agreed on the record that those were the years at issue. I also pointed out in Appellee's brief that his continuance request, his child support calculations, and his position statements all dealt with the years in question. It's clear when one looks at the record of the proceedings in this case and why the trial court asked Mr. Field to file that he was fully aware of what was pending before the court, and I would also draw the court's attention to the fact that the motion for TRIP or the motion for additional child support technically isn't a pleading. It's a motion in a pending case, almost akin to a motion to enforce the marriage settlement agreement. She was asking the court to calculate Mr. Field's income or net income for child support purposes for the years in question because the parties couldn't agree to what that was. So it wasn't a request for relief akin to a petition for dissolution. A petition for modification would be a pleading. But a motion to enforce, which is really what this is, is not a pleading subject to the pleading requirements under the Code of Civil Procedure. All that was required was notice and the ability for Mr. Field to participate for due process to be complied with, and that was done by his own admittance in the record. Okay, my other question had to do with the April 4, 2024 order and the amount of credit that he received as it pertained to the Social Security derivative benefit. Yes, Your Honor. Was that a stipulation? You're asking the same question. There was a stipulation on the record that the direct derivative benefit that Ms. Field received as an alternate payee on behalf of the children was indeed credited back to him by stipulation. The issue, and I do want to make clear to this Court, and I was mistaken in the brief, but the record and Ms. Field's testimony makes this clear. The child and care benefit is what I think Mr. Field is disputing. I had indicated in Appelli's brief that that was derived from her earnings. It was not. That was a mistake of fact on my part. It was a child and care credit benefit through Social Security that she receives as a divorced spouse of Mr. Field. When she applied for that, she initially thought, and she testified too, that she would be receiving more because she had retired at that point and she was entitled to draw on his Social Security. But it's treated differently than the derivative benefit. She is the payee, not the children, and it's based on her income, and she actually pays income tax on that. I did do substantial research to try to find Illinois case law that dealt directly with the child and care benefit. The Henry Henry case that's cited in the brief deals with the direct derivative benefit that Mr. Field did get credit for. But the record is clear that this was Ms. Field's Social Security that she received because she was a former spouse with dependent children in her household. So I don't believe that the trial court abused its discretion when it didn't credit. Are the children still minors? Currently, one is not a minor, and there is currently one minor child. But for the time in question, both children were still minor children. The second issue that Mr. Field has brought to this Court's attention is whether or not he was prejudiced by the trial court proceeding on one of three nearly identical motions for attorney's fees for an unfavorable appeal previously filed in this case. The trial court questioned the parties as to what was pending. I did identify and direct the trial court during the proceedings that there were inadvertently three nearly identical motions for fees that were filed. I did indicate, and it's in the record, that I had left the firm. I think there was some confusion and duplicate motions for attorney fees were filed. I repeatedly stated at the trial court, it didn't matter which one we proceeded on. I left that at the trial court's discretion. While Mr. Field argues that somehow that was an abusive discretion for the court to proceed on the actual motion that it did, at the end of the day, it doesn't matter. The facts and the issues on all three of those motions were identical. Mr. Field had the opportunity to be heard, and he participated in that proceeding in the lower court. The third issue that Mr. Field raises is res judicata, as to the sanctions for filing a false financial affidavit. Res judicata is an affirmative defense, which must be raised at the time of trial where it was waived. The record's clear on this one as well. Mr. Field agreed and stipulated that the motion for filing a false affidavit was pending. He participated. It wasn't until he filed his appeal that he raised the issue of res judicata. That affirmative defense has been waived. The fifth issue raised by Mr. Field is whether or not the trial court abused its discretion when it included travel allowances and a profit-sharing contribution by his employer to his net income for 2016. In the calendar year 2016, Mr. Field was still employed as a partner at Sherlison Field. At no point did Mr. Field provide any evidence that the travel allowance was anything other than an annual flat fee of $13,500 that he was paid. He presented no evidence that that was actual mileage reimbursement at the IRS rate or that they paid for maintenance or upkeep on the vehicle. It was nothing more than his travel to and from his home and to the office. Therefore, the court didn't abuse its discretion when it included those travel allowances in its income because it didn't prove that it was an expense that he incurred in the furtherance of his income. The other issue... What is the standard of review on that issue? The standard of review would be abuse of discretion standard. Same applies to the profit-sharing. The Elmwood Marriage and Dissolution of Marriage Act of 2013 that governs the party's marriage settlement agreement in this case defined net income as income from all sources minus certain deductions. One of the deductions that would have been allowed is mandatory retirement contributions. There was no evidence presented to the trial court whatsoever that the profit-sharing was a mandatory retirement contribution of the firm. To the contrary, it was just what it was entitled, a profit-sharing plan that was paid into by the firm on behalf of Mr. Field due to sharing profits that the firm generated. It was never deducted from his income nor was it a mandatory deduction for it to have been excluded from his net income calculations for 2016. Therefore, the trial court didn't abuse its discretion when it included those profit-sharing amounts in his income. The sixth issue that Mr. Field raises is that of the statutory interest. Interest on child support is mandatory and child support orders are considered reoccurring. Case law is very clear on that. Mr. Field's interpretation would require a new order each and every year to be entered. That's not required pursuant to the terms of the marriage settlement agreement. The marriage settlement agreement said his child supported 28% of his net, $1,300 a month, which he would be given credit for upon a true-up or a calculation in March of the subsequent year, and then he was to pay the difference. The interest started accumulating according to the statute under the trial court's order in April of the subsequent year. Furthermore, the marriage settlement agreement, though it is a contract, is still bound by the public policy of Illinois. It would be a violation of public policy to waive the child support obligation or the interest on that child support obligation because the child support is a right of the children. The children have the right to receive the child support from their father. And then the last issue, and I think the most important issue, is the imputation of Mr. Field's income. The marriage settlement agreement was a statutory 28%. When a court cannot ascertain the income or an individual voluntarily reduces his or her income, the court may impute an earning capacity. This is routinely done. The record is clear that Mr. Field walked away from significant income. He admitted that he did. He walked away from equity in a firm, reduced his income from making well over $100,000 a year to making $16,800 annually, well below the minimum wage, after being an equity partner in a personal injury firm. He funneled personal expenses through his solo practice and refused to provide information ordered to be provided by the court. Therefore, the trial court absolutely, in its discretion, could assign an earning capacity to him for the years in question, and we would ask that this court affirm the trial court's decision. If I remember correctly, I think Mr. Field's argument was that this imputation issue was not pled, so therefore he kind of ambushed with it, if I'm putting words in his mouth, but that's how I took that. So was that a pled in anything, or was that included in any pleading? It was not included in the motion, but the court, at its discretion, can always do that. This is, once again, not a pleading to modify, a petition to modify. It was a motion. Mr. Field had to have been on notice, especially as an attorney, that the court can impute an earning capacity to him at any point in time. There were repeated discovery violations. I think stretching back to 2017, the initial hearing had to be continued because Mr. Field did not comply with discovery orders, wherein the court can't. I believe the court could have sua sponte-ish entered an earning capacity assessment to Mr. Field when the court couldn't ascertain his earnings, and I think the record is clear that no one knew what his income was because he was so evasive. At one point, he states that he didn't walk away from anything, and then he admits that he did walk away from retained earnings that were due and owing to him in the firm because they were ill-gotten gains, whatever that means, without much further explanation. Thank you. Thank you. Thank you. First, regarding the stipulation on her debt, that is correct. We stipulated as to what additional child support, or not child support, family benefit Gala received into her personal account. That's what we stipulated to. What she had done was a family benefit, and it started out, it was split between the two children, and then in 2021, after we decided that we were going to split custody of our son, she applied for part of the family benefit, and instead of splitting the benefit two ways between the children, she had to split three ways, giving her one-third of that family benefit, and that's what I was saying. It was based on my income, and I was entitled to that, and that was the stipulation, Your Honor, as to what she had received during that time period. Okay. Now, with regard to retirement, Your Honor, it was always on my W-2s. It was always stated as a retirement, but that was not included as income too weak to the IRS, and it was on all my financial statements, I put down that that was a retirement account. It was never mentioned any other way. I said specifically it was a retirement account, and the W-2s backed me up on that, that that was never considered. It was a retirement account. The interest due. The interest by statute is when it is due. And my position is when the court determines. We're talking about additional child support. We're not talking about back child support. We're talking about additional child support. When the court determines when it's due, if she had the right to come in at any time, that's when interest applies. If I dispute how much is owed, then I'm penalized by interest. If I have a legitimate position, no. The statute says when it's due. I said I walked away from equity. No, Your Honor, it's in the record. I was paid for the equity. In fact, out of my payment for the equity, Dell received over $54,000. She received, you know, I was paid for the equity. Retained earnings. They keep pointing to that. There were retained earnings in 2014. We're not talking about 2023 when the court's asking me about retained earnings. Or even in 2017. And it doesn't take into consideration what I was paid in 2015, 2016. Because what was at issue? If they want to raise the issue, what was retained earnings in 2017? It's not in the record. There's nothing, you know, in the record regarding my retained earnings, if there were any. They raised the issue as to what I said as to ill-gotten gains. I said if you didn't turn in your partner, and I'll just point out to the court, in all relationships, Your Honor, there's a client and there's an attorney. And I've deposed many doctors, and I asked the doctors in evidence depositions, I said, doctor, can you give me an opinion to reason the degree of medical certainty whether or not the accident your client described or your patient described was a cause of the injuries you're treating for? And the answer would be yes. And, of course, the next question would always be, and you have to rely on the truth and veracity of your client. Am I correct? That's correct. And that's how I would answer that, Your Honor. It was my partner, and I did nothing wrong. I don't have to turn him in, even, you know, if anything. They keep talking about repeated discovering violations. In ten years, there were two motions to compel great issues, both of them on our IALTA accounts. We objected to turning over our IALTA accounts. I had an office that I was associated with in Chicago. They subpoenaed those records in our office. I don't work at, on cases I don't work on. I never worked on. And the young man who worked up there in our firm objected. My partner objected. He said, what are we doing in Chicago? And the trial court, and we filed a motion to quash. The court said, you've got to turn them over. That was their motion to compel. On me, there was one motion to compel. Same issue. The trial court said she subpoenaed my IALTA accounts. She didn't ask for them in discovery. She subpoenaed them. And I filed a motion to quash. Gentlemen, I can't turn those over without a court order. That's my position. And those are confidential information. How can I turn that over without having you? The proper way for it to do it is for me to turn it over to the trial court, the trial court review it, and then determine. Thank you, Your Honor. I'll give you time to briefly sum up. Well, briefly, Your Honor. Interesting. What I was dealing with, Your Honor, in 2017, I had to make a determination. None of us lived forever. And as I put in my brief and I told the trial court, I had asked them, have you ever been taken out of your office on a stretcher? Yeah. That happened to me in July of 2017. And that's when I made the final determination to sell my equity, my partnership. I had a heart condition. I was being treated for thyroid cancer. I was sitting there going, none of us lived forever. When we got into this case for the hearing, prior to August 7th, no one had said anything about imputing income. Not a word. Nothing. All right. That's it. Thank you. Thank you, everybody. We will take this matter under advisement and issue a ruling in due course.